398 So.2d 1312 (1981)
Howard JONES
v.
STATE of Mississippi.
No. 52536.
Supreme Court of Mississippi.
May 27, 1981.
Tom Tullos, Bay Springs, for appellant.
Bill Allain, Atty. Gen., Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
*1313 HAWKINS, Justice, for the Court:
The appellant Howard G. Jones was convicted by the Circuit Court of Jasper County of aggravated assault in the shooting of Mrs. Doris Hutto with a .22 calibre pistol, and sentenced to serve a term of 15 years. He was indicted by the grand jury of that county March 7, 1979, and his first trial began September 7, 1979.
During the course of the first trial several law enforcement officers, prefatory to offering into evidence a taped recording of Jones's confession, testified before the court as well as the jury that allMiranda warnings had been given.
When the tape was played before the jury, however, the first words heard were a request by the defendant for a lawyer.
Defense counsel promptly objected, and the court declared a recess. Out of the presence of the jury it was revealed the officers had two taped recordings of statements made by the defendant. The first was played to the jury by the state, the prosecution apparently being totally unaware of the content of the first statement before it was actually played to the jury. The court directed both tapes be played in chambers. Discomfited, the state's attorney then told the court the state could not proceed with the case before that jury.
The court called the jury back into the courtroom, and announced the court was excluding the confession.
The state then announced it was not able to proceed "with this particular trial and the state moves for a mistrial."
*1314 The court thereupon announced: "The mistrial will be granted," and dismissed the jury.
Prior to the second trial, the defendant made a motion to dismiss because of the double jeopardy proscription of the Fifth Amendment of the United States Constitution. Nevertheless, another trial was held March 6, 1980, at which time the defendant was convicted.
The critical issues raised by this appeal are first, whether or not the prohibition against double jeopardy had attached when the state made its motion for a mistrial, and secondly, did the court abuse its discretion in granting a mistrial, thereby giving the defendant immunity from further prosecution. We are compelled to answer both propositions in the affirmative. Mandated by decisions of the United States Supreme Court, the rule in this state beginning with this case is that double jeopardy attaches in any criminal proceeding at the moment the trial jury is selected and sworn to try the case. Because of the guarantee against double jeopardy granted to all citizens by the Fifth Amendment to the United States Constitution no retrial for the same offense will be permitted in any criminal case in which the first trial, following the swearing and impaneling of the jury, was aborted prior to conclusion, unless exceptional circumstances existed in the first case, and there was a manifest necessity for the trial judge to declare a mistrial.
In the halcyon days of prosecution of criminal cases in Mississippi, the rule in all our state courts was double jeopardy prohibition did not attach until there had been a verdict by the jury or judgment of the court. In Lovern v. State, 140 Miss. 635, 105 So. 759 (1925), this Court held:
"In order for a plea of former jeopardy to avail, it must appear that the defendant was actually acquitted or convicted in a former trial `on the merits' of the crime for which he is again sought to be convicted. Mississippi Constitution § 22."
This rule was followed in the cases of State v. Pace, 210 Miss. 448, 49 So.2d 710 (1951) and Bounds v. State, 271 So.2d 435 (Miss. 1973).
The federal courts, however, have consistently applied a different rule. In United States v. Perez, 22 U.S. 579, 9 Wheat 579, 6 L.Ed. 165 (1824), in the first trial a mistrial was declared because of a hung jury. Upon retrial, the defendant pleaded double jeopardy. This claim was rejected by the United States Supreme Court, but with the following cautionary language:
"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should by extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."[1]
In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the defendant's indictment charged arson in the first count and murder in the first degree in the second count. As to the second count, on the trial, the trial judge instructed the jury on both first and second degree murder. The jury returned a verdict finding *1315 the defendant guilty of arson under the first count and of second degree murder under the second count. Upon the defendant's appeal from his conviction of second degree murder, the Court of Appeals reversed that conviction. On remand the defendant was tried again for first degree murder under the original indictment, and at the outset of the second trial he raised the defense of former jeopardy, which was overruled. He was found guilty of first degree murder and sentenced to death. This conviction was affirmed by the nine judges sitting en banc in the Court of Appeals, but the case was reversed by the United States Supreme Court. The United States Supreme Court held that the defendant could not be tried again for first degree murder. The Court used the following language:
"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
* * * * * *
"Moreover, it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge. This Court, as well as most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again ... This prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict. At the same time jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where `unforeseeable circumstances ... arise during (the first) trial making its completion impossible, such as the failure of a jury to agree on a verdict.'"
In the case of Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) during a criminal prosecution in the United States District Court for the Western District of Texas, after the jury had been selected and sworn, and instructed to return that afternoon, the prosecution asked that the jury be discharged because its key witness had not yet been found. Over the objection of the defendant, the court discharged the jury, and two days later empaneled a second jury, which found the accused guilty. The United States Supreme Court held this to be impermissible, that the government should not be permitted to try the defendant a second time under the circumstances of this case. Again, the language of the court is very instructive:
"... it has been agreed that there are occasions when a second trial may be had although the jury impaneled for the first trial was discharged without reaching a verdict and without the defendant's consent. The classic example is a mistrial because the jury is unable to agree ... Discovery by the judge during a trial that a member or members of the jury were biased pro or con one side has been held to warrant discharge of the jury and direction of a new trial ... At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest  when there is an imperious necessity to do so ... Differences have arisen as to the application of the principle .. . Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches ... But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised `only in very extraordinary and striking circumstances,' *1316 to use the words of Mr. Justice Story in United States v. Coolidge (CC Mass.) 2 Gall. 364 [25] F.Cas.No. 14858. For the prohibition of the Double Jeopardy Clause is `not against being twice punished; but against being twice put in jeopardy.'"
* * * * * *
"`The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses.'"
In the case of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970), the United States was prosecuting in the District Court of Utah a preparer of income tax returns for willfully assisting in the preparation of fraudulent income tax returns. The jury was duly empaneled, and the first witness, a government agent, had completed his testimony. The trial judge, acting on his own motion, discharged the jury and declared a mistrial when he concluded that taxpayers who were to be called as witnesses by the government, and who allegedly had been aided by the defendant in preparing their returns, had not been properly advised on initial contact by the Internal Revenue Service of their constitutional rights against self-incrimination, and thus should be allowed to consult with attorneys. Beginning on page 554, the Court made the following statement:
"As the Court noted in Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), `a defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments.'
"Thus the conclusion that `jeopardy attaches' when the trial commences expresses a judgment that the constitutional policies underpinning the Fifth Amendment's guarantee are implicated at that point in the proceedings."
The Court again stated on 400 U.S. page 482, 91 S.Ct. page 536:
"... it is because, independent of the threat of bad-faith conduct by a judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial."
Again on 400 U.S. page 485, 91 S.Ct. page 557 of the opinion, the Court stated the following:
"... Yet we cannot evolve rules based on the source of the particular problem giving rise to a question whether a mistrial should or should not be declared, because, even in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.
"In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disservice the vital competing interest of the Government and the defendant. The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. *1317 Cf. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."
As to the argument made before the Supreme Court that the prosecutor did not request a mistrial, nor in fact did the defendant object, the Court stated the following beginning on 400 U.S. page 485, 91 S.Ct. page 557 of the opinion:
"... the judge cut him off in midstream and immediately discharged the jury. It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of his mistrial... . Therefore, we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment."
In Gori v. United States, 367 U.S. 364, 81 S.Ct. 2523, 6 L.Ed.2d 901 (1961) the district judge declared a mistrial under circumstances which led the appellate courts to conclude he had done so to protect the interest of the accused. The United States Supreme Court held this action, having been made in the interest of the accused, did not prevent a retrial. Also, annotations of cases involving the claim of double jeopardy after declaration of a mistrial in federal courts, 6 L.Ed.2d pp. 1510-1519, give further examples.
Beginning with Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court has held the double jeopardy bar of the Fifth Amendment to the United States Constitution is applicable to state court trials as well. Also, Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1972).
Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1977) bears heavily on the ruling we must make in this case. In Crist, a Montana state court, after the jury was empaneled and sworn, but before any witnesses were sworn, granted a prosecution motion to dismiss the information. Thereafter, a second information, not containing the error for which the first information had been dismissed, was filed, and at the beginning of the second trial defendants made a motion to dismiss on ground of double jeopardy clauses of the United States and Montana Constitutions. The trial court overruled the motion, and the defendants applied for habeas corpus relief in the Supreme Court of Montana, which was denied. The case proceeded to trial, and upon their conviction, the defendants applied for habeas corpus relief in a United States District Court. When the case reached the United States Supreme Court, it held the federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy, and therefore applicable to state courts as well. The second trial of the defendants was held to be impermissible under the United States Constitution.
In Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1977) defense counsel made prejudicial comments to the jury in his opening statement after being warned by the Court to refrain from doing so. The Court declared a mistrial upon the *1318 motion of the state. The trial judge did not expressly find there was a manifest necessity for a mistrial, nor expressly state he had considered alternative solutions and concluded none would be adequate to cure the prejudice arising from the comments made by defense counsel. The United States Supreme Court made the following observations, beginning on 434 U.S. page 507, 98 S.Ct. page 831, 54 L.Ed.2d page 729 of the Report:
"... we assume that there are degrees of necessity and we require `high degree' before concluding that a mistrial is appropriate.
"The question whether that `high degree' has been reached is answered easily in some kinds of cases than in others. At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. Although there was a time when English judges served the Stuart Monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this `abhorrent' practice... ."
The Court finally concluded, that even though the trial judge had made no express finding before declaring a mistrial, it was obvious in this case there was no abuse of discretion in declaring a mistrial, and by so doing he had not granted the defendant immunity from retrial for the same offense.
It could be argued the failure of defense counsel to object to the court's ordering a mistrial upon the motion of the state cured such error. We cannot agree with this contention, because in the first place, the wise and learned trial judge, with a wide experience in conducting trials in circuit court, would certainly have offered defense counsel an opportunity to interpose an objection had he any thought of sustaining such an objection and ordering the trial to continue. If trial judges have any inclination whatever except to grant a motion made by a party, they invariably ask opposing counsel for their position on the motion. In the second place, when a mistrial is granted under such circumstances as in this case, the defendant is not required to object in order to avail himself of the constitutional privilege against being prosecuted twice. There may well be gray areas in which the trial judge must exercise his discretionary powers in determining whether or not a mistrial should be declared, and in which the position of both parties is requested by the court, where the defendant's position of either objecting or assenting to a mistrial will become quite relevant in considering whether a retrial constitutes double jeopardy. There are also cases, of course, in which the defendant himself must for his protection affirmatively move for a mistrial. A mistrial granted in such a case would never bar a subsequent trial for the same offense. We cannot lay down precise or exact rules, each case must rest upon its own particular facts. We do hold, however, that in a clear cut case as this, the failure of defense counsel to interpose an objection, when a mistrial is abruptly declared will not authorize a subsequent trial for the same offense.
We have no doubt given a broader view of the application of the federal rule in various cases than necessary to reach a decision in this case, hopefully in order to demonstrate to prosecuting attorneys and trial judges there is no simple rule or formula defining the standard of "manifest necessity" or when exceptional circumstances exist justifying a declaration of mistrial by the trial court. The question is not easily answered. There are obvious cases of manifest necessity, e.g., a hopelessly hung jury, or a tainted jury, just as this case is an obvious case where "manifest necessity" to declare a mistrial was absent. In the final analysis, the determinations must be made by the trial judge fulfilling his somber responsibility as to when justice requires him to declare a mistrial.
Although it may not be necessary in each case to do so, we believe a prudent procedure for any trial court before declaring a mistrial would be to state into the record *1319 the reasons for declaring a mistrial. It is in his sound discretion to determine the necessity of declaring a mistrial, and upon any appeal his reasons as stated for the record will be accorded the greatest weight and respect by an appellate court.
Schwarzauer v. State, 339 So.2d 980 (Miss. 1976) was a harbinger to prosecuting attorneys and trial judges this State might depart from the previous rule existing in state prosecutions as to when double jeopardy attached. In that case the trial court had sequestered the jury, and learned the next day two of the jurors during the night had become separated from the remaining jurors and visited in the motel lobby where the jury was spending the night. The trial judge declared a mistrial. The defendant argued double jeopardy in the second trial, and also upon appeal to this Court following conviction. We held the mistrial was ordered because the judge felt compelled to take such action in order to protect the rights of the defendant and the state to the end that justice would be served. No refuge was taken in that case under the prevailing state court rule at the time that double jeopardy did not attach until an acquittal or conviction. We stated therein, page 982:
"... We are unwilling to rule that the double jeopardy provision of the Fifth Amendment to the United States Constitution means that every time a defendant is put to trial he must be set free if the trial aborts and does not conclude with a final judgment. The better rule which we apply here is that trial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued. Such action may be taken in proper cases, after which the defendant may be tried by another panel of jurors, when the trial judge reasonably concludes that the ends of justice would thereby be best served, even though the defendant objects. In such situations, and absent any indication of prosecutorial manipulation as is the case here, we will not reverse a criminal conviction. We recognize that the fair and orderly administration of justice requires that trial judges must have reasonable discretion in dealing with errant jurors who demonstrate their unwillingness to abide by the instructions of the court, or other unanticipated occurrences which transpire during trials. Our holding is in accord with Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), both of which recognize that there are no rigid rules that can be followed in every case where double jeopardy is argued. Upon this record, our judgment is that the trial judge in ordering the mistrial appropriately acted within his sound judicial discretion in furtherance of the ends of justice... ."
In this case, and in an attempt to give a somewhat broader perspective of the problem facing trial courts before declaring a mistrial, we reiterate the above quoted language from Schwarzauer.
The judgment of conviction is therefore reversed, and the appellant discharged.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] In the early years of our Nation's history, the Federal rule was the same as our State court rule. See cases cited in footnote to Perez. Even Judge Story, the author of the Perez opinion, in his Commentaries on the Constitution, § 1781, pp. 659-660, said as much. Apparently, when Perez was handed down in 1824, the Court had changed its mind.