# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CT-01117-SCT

*HANSON JENKINS, JR., a/k/a "BOB"*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/1997 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD A. REHFELDT |
| | A. RANDALL HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | DOUGLAS EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/18/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/8/2000 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. We grant certiorari in this case to consider the interpretation of the manifest necessity requirement attentive to claims founded upon double jeopardy and arising out of the grant of a mistrial. We conclude that the Court of Appeals erred in its application of the principle. Nevertheless, because we find that the Court of Appeals also misinterpreted the record in concluding that any double jeopardy issue was raised or preserved, we affirm its judgment and that of the trial court.

### I.

¶2. Hanson Jenkins, Jr. was twice put on trial under an indictment which charged him with sale of less than one ounce of marijuana and possession of more than one ounce of marijuana with intent to distribute. Jenkins was found guilty at his second trial and was sentenced to seventeen years in prison with five years suspended and twelve years to serve.

¶3. Jenkins raised six issues on appeal to the Court of Appeals of Mississippi. The Court of Appeals found these issues to be without merit and affirmed the convictions. *Jenkins v. State*, No. 97-KA-01117-SCT (Miss. Ct. App. Aug. 10, 1999).

¶4. Jenkins's petition to this Court for a writ of certiorari raised a single issue. It is an important issue because it involves whether Jenkins was denied a constitutional guarantee: Did the fact that Jenkins was retried, after a mistrial was granted in his first trial, result in a violation of the Double Jeopardy Clause under the Fifth Amendment to the U. S. Constitution and Art. 3, § 21 of the Mississippi Constitution?

¶5. Certiorari was granted because the Court of Appeals reached the right result in affirming Jenkins's conviction, but for the wrong reasons. We granted the writ to correct that error, less the bench and bar be misled.

## II.

¶6. There was confusion over the seating of jurors in Jenkins's first trial. The Court of Appeals summarized the situation in its majority opinion, which we quote to avoid the use of paraphrase, as follows:

> The convictions now before us were the result of Jenkins's second trial on this indictment. The first trial ended in a mistrial declared by the trial court, on its own motion, when it was discovered that one juror selected to sit in trial of the case had, through circumstances not fully understood, failed to take his seat in the jury box. Instead, another member of the venire not selected as a juror had taken that seat. This problem was not discovered until the trial had commenced. Upon initial discovery of the problem, defense counsel moved for a mistrial but the trial court denied the motion, concluding that a qualified alternate juror could be substituted for the missing juror without any prejudice to the defendant. However, later during the proceeding, the prodigal juror was located and the trial court inquired further into the circumstances. At that point, it began to appear that the trial court, in calling out the names of those selected to sit on the jury, had failed to call this juror's name. The trial court was apparently of the opinion that the court's failure to call the juror presented a different circumstance than the case where the juror's name was actually called but the juror failed to properly respond. Based on these developments, and without seeking the view of either the State or the defense, the trial court declared a mistrial on its own motion.

¶7. The Court of Appeals determined that the State was not barred from trying Jenkins a second time, because a "manifest necessity" for a mistrial was presented by these facts. The majority found support, in prior opinions by the United States Supreme Court and this Court, for the proposition that juror problems are matters vested in the sound discretion of the trial court. Three dissenting judges would have reversed and rendered for Jenkins pursuant to an analysis of precedents applied to the same facts.

¶8. A reviewing court examines the entire record to determine if a manifest necessity exists for a mistrial. *United States v. Bauman*, 887 F.2d 546, 550 (5th Cir. 1989). If the record in this case revealed only the facts above presented, we would likely be compelled to reverse Jenkins's convictions. Our analysis of the entire record explains how we can disagree with the majority opinion of the Court of Appeals, yet affirm the conviction.

## III.

¶9. The transcript of the first trial reveals that a juror was discovered to be missing before any testimony had been taken. The trial court announced that it was considering seating an alternate juror. The defendant thereupon moved for a mistrial. The trial judge announced that the trial would proceed with the seating of an alternate juror. The trial began. Some direct testimony was being taken from a police officer when the

prodigal juror returned. The following exchange occurred outside the presence of the jury:

By the Court: The other juror is here.

By Mr. Gilmore (Counsel for Defendant): I renew my objection.

By Mr. Evans (District Attorney): Well, we've already started the trial. I don't think there's any question at this point, is there?

By the Court: I think the stone has been laid.

By Mr. Gilmore: We would like to make a record.

By the Court: All right. Make whatever record you want. Have a seat.

By Mr. Gilmore: Are you going to announce the situation?

By the Court: Let the record reflect that we've started the trial and we're about half-way through the first witness. The Court has already seated the alternate, and at the time the missing juror has appeared. Mr. Gilmore wants to make a record on that.

By Mr. Gilmore: Again, I would renew my objection to proceeding with this jury and ask the Court to declare a mistrial.

By the Court: That motion is overruled. Is there anything else on that issue?

By Mr. Gilmore: No, sir.

By the Court: You can tell him to go home now.

By Mr. Evans: Your Honor, I would make a motion really to ask that you ask if anybody told him to leave or anything like that, just to be safe.

By the Court: That's fine. And, I'm going to tell y'all what I'm going to do. If he states that I told him to leave that I will declare a mistrial.

¶10. The record indicates that the trial judge and attorneys then questioned the prodigal juror. The juror said his understanding was the judge said he could leave. The transcript reads:

By Mr. Gilmore: So, it was your understanding that the Judge told you that you could leave?

By Prodigal Juror: Yes, sir.

By Mr. Gilmore: *I renew my motion, your honor.*

By the Court: Have y'all got anything further from him.

By Mr. Evans: No, Your Honor. I just wanted to make sure that he didn't say that the State or any of our witnesses told him to leave.

By the Court (to juror): . . .you're free to leave. I'm sorry for the mix-up.

(emphasis added).

¶11. The transcript reveals no ruling at this point on the renewed motion. Two bailiffs and the circuit clerk were then questioned. One bailiff and the circuit clerk were under the impression that the judge did not call the prodigal juror's name when the jury was seated.

¶12. The following exchange then occurred:

By the Court: *I think the Defendant would have to get the benefit of the doubt*. I recall calling (the prodigal juror) but I also could be mistaken in that, and the bailiffs and the Clerk that were here watching me do it, and both are responsible for getting the jury up there, do not recall that I did it, and in fact their recollection of the events was that I did not do that. That would mean that I improperly dismissed a juror who had been chosen in this case, and so I'm going to grant a mistrial in this case.

By Mr. Horan (Asst. DA): I think the record is quite clear but the State is asking the Court to rule whether or not the reason for the mistrial had nothing to do with the prosecution so we wouldn't have a jeopardy problem.

By the Court: Absolutely. *The mistrial is granted by error of the Court*. It is not 100% clear that the Court made the error, but I concede that I probably did, *and in an over abundance of caution I am granting the Defendant's motion for mistrial*, but it is through no fault of the State whatsoever or of the Defendant for that matter. If it was an error it was the Court's error. And, so no jeopardy attaches. Let me bring the jury back in. (The jury returns.)

Y'all all kind of know about Murphy's law, and that's kind of been my experience that once you get off on the wrong foot sometimes it never does get back on the right one. [The prodigal juror] showed up, and if I inadvertently dismissed him, then in was improper by me to do that . . .I apologize to y'all for any mistake that I made and the time that we've spent up here that we weren't able to proceed and finish it up. But, I think the only proper thing for me to do is rule that possibly could have occurred and if it did *I have to rule in favor of the Defendant at this point in time*. So, I thank you very much, but you are finally released.

(emphasis added). (Here the transcript of the first trial ends.).

¶13. The transcript shows that the trial court granted the renewed motion for mistrial. There is no indication that the defense objected to the grant of the mistrial at the time it was finally granted, nor did the defense object to the court's several remarks which characterize the order as a ruling in favor of the defense on the renewed motion.

¶14. Some six months later, and prior to commencement of the second trial, Jenkins's counsel made a written motion to dismiss the indictment. The motion was based on the Double Jeopardy Clause, and the motion described the grant of mistrial as a *sua sponte* action by the trial judge. The order denying the motion was to the same effect.

¶15. In summary, the court papers give one version of what happened at the first trial. The transcript of the first trial gives another. More importantly, the transcript shows clearly that Jenkins did not want to be tried by the jury seated at the first trial and obtained a ruling in his favor to that end.

¶16. This Court has said, "A chancellor's bench ruling is not final, but is subject to modification by that same chancellor."*Grey v. Grey*, 638 So.2d 488, 492 (Miss. 1994). Here, the order did not modify the bench ruling, it misstates or incorrectly characterizes it.

¶17. From the record, this case should be reviewed on appeal as a grant of a criminal defendant's motion for mistrial. In such circumstances this Court has said:

> Generally, a defendant who moves for mistrial is barred from later complaining of double jeopardy. *McClendon v. State*, 387 So.2d 112, 114 (Miss.1980). To overcome this bar, (Defendant) must show that error occurred and that it was committed by the prosecution purposefully to force (Defendant) to move for a mistrial. *Carter v. State*, 402 So.2d 817, 821 (Miss.1981); see also *Divans v. California*, 434 U.S. 1303, 1303, 98 S.Ct. 1, 1, 54 L.Ed.2d 14, 15 (Rehnquist, Circuit Justice, 1977). Without proof of judicial error prejudicing the defendant, or "bad faith prosecutorial misconduct," double jeopardy does not arise. *United States v. Jorn*, 400 U.S. 470, 482, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 555 (1970) (plurality).

*Nicholson on Behalf of Gollott v. State*, 672 So.2d 744, 750 (Miss. 1996). If it can be shown that an error of the trial court is intended to force a motion for mistrial by the defense, the double jeopardy bar is raised. *Divans*, 434 U.S. at 1303. Under these standards, there is no double jeopardy bar in this case because the record shows that Jenkins's motion was based on an unintentional mistake made by the trial judge.

**a.**

¶18. If a mistrial is granted upon the court's motion or upon the State's motion, a second trial is barred because of double jeopardy, unless taking into consideration all the circumstances there was a "manifest necessity" for the mistrial. *Watts v. State*, 492 So.2d 1281, 1284 (Miss. 1986).

¶19. For purposes of our grant of certiorari, we have considered whether the manifest necessity standard was met under the facts as presented in the opinion in this case by the Court of Appeals. If there was a manifest necessity for a mistrial under such facts, review by this Court would not be necessary.

**b.**

¶20. The origin of the phrase "manifest necessity" can be traced to a decision of the U. S. Supreme Court in 1824 wherein the Court, speaking through Justice Story, said, "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed.165 (1824).

¶21. Through a line of federal double jeopardy cases, it was established that jeopardy attaches before a judgment is final. The rationale for the rule is that a defendant has a valued constitutional right to be tried by a particular jury. This right is valuable, even if the first trial is not completed, because a second prosecution (1) increases the financial and emotional burden to defendant, (2) prolongs the period of stigma by the charges against him, and (3) may enhance the risk of conviction of an innocent defendant. Thus, the general rule is this: A prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-04, 98 S.Ct. 824, 829-30, 54 L.Ed.2d 717 (1978).

¶22. On the other hand, the defendant's valued right is sometimes subordinate to the public interest in allowing the prosecutor one full and fair opportunity to present his case to an impartial jury. Even in such circumstances, however, the defendant's "valued right" places a heavy burden on the State to justify a mistrial. The State must show that a "manifest necessity" existed for the mistrial. *Arizona v. Washington*, 434 U.S. at 503-05.

¶23. In 1981, Mississippi moved in line with federal case law. In *Jones v. State*, the prosecution was surprised by the trial court's exclusion of incriminating evidence and moved for a mistrial. The mistrial was granted by the trial court. In determining that the defendant could not be retried in such circumstances, this Court explicitly abandoned the Mississippi rule that double jeopardy only applies where the defendant was actually acquitted or convicted in the first trial. This Court also expressly adopted the manifest necessity standard, saying:

> Mandated by decisions of the United States Supreme Court, the rule in this state beginning with this case is that double jeopardy attaches in any criminal proceeding at the moment the trial jury is selected and sworn to try the case. Because of the guarantee against double jeopardy granted to all citizens by the Fifth Amendment to the United States Constitution no retrial for the same offense will be permitted in any criminal case in which the first trial, following the swearing and impaneling of the jury, was aborted prior to conclusion, unless exceptional circumstances existed in the first case, and there was a manifest necessity for the trial judge to declare a mistrial.

*Jones v. State*, 398 So.2d 1312, 1314 (Miss. 1981).

¶24. Continuing, this Court said in *Jones*:

> We have no doubt given a broader view of the application of the federal rule in various cases than necessary to reach a decision in this case, hopefully in order to demonstrate to prosecuting attorneys and trial judges there is no simple rule or formula defining the standard of "manifest necessity" or when exceptional circumstances exist justifying a declaration of mistrial by the trial court. The question is not easily answered. There are obvious cases of manifest necessity, e. g., a hopelessly hung jury, or a tainted jury, just as this case is an obvious case where "manifest necessity" to declare a mistrial was absent. In the final analysis, the determinations must be made by the trial judge fulfilling his somber responsibility as to when justice requires him to declare a mistrial.

> Although it may not be necessary in each case to do so, we believe a prudent procedure for any trial court before declaring a mistrial would be to state into the record the reasons for declaring a mistrial. It is in his sound discretion to determine the necessity of declaring a mistrial, and upon any appeal his reasons as stated for the record will be accorded the greatest weight and respect by an appellate court.

*Id*. at 1318.

¶25. Although there is no simple formula for determining what constitutes a manifest necessity to declare a mistrial, this Court has indicated that a manifest necessity may be found to exist in the following circumstances: failure of a jury to agree on a verdict; biased jurors; an otherwise tainted jury; improper separation of jury; and, when jurors demonstrate their unwillingness to abide by the instructions of the court.

***Spann v. State***, 557 So.2d 530, 532 (Miss. 1990). Also, a manifest necessity was found where a juror failed to divulge, after an unambiguous inquiry, that she was related to a law enforcement officer in a case where the entire venire had been exhausted by the time twelve jurors had been selected to try the case. ***Box v. State***, 610 So.2d 1148, 1152-53 (Miss. 1992).

¶26. The majority opinion of the Court of Appeals has focused principally on three cases: ***Thompson v. United States***, 155 U.S. 271, 15 S.Ct.73, 39 L.Ed. 146 (1894); ***Arizona v. Washington***, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed. 2d 717 (1978); and, ***Schwarzauer v. State***, 339 So.2d 980 (Miss. 1976). Each of these cases, although factually distinct, was offered for the proposition that a trial judge is vested with discretion in the exercise of its authority to grant a mistrial. In ***Arizona v. Washington***, *supra*, the U. S. Supreme Court said:

> [the words manifest necessity] do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

434 U.S. at 506.

¶27. It is clear from ***Arizona v. Washington*** that an appellate court should recognize there is a "broad spectrum of trial problems which . . . vary in their amenability to appellate review." 434 U.S. at 510. For example, the trial court's determination of the prejudicial impact of an improper argument by counsel is entitled to great deference on review. 434 U.S. at 514. And, the strictest appellate scrutiny applies when the basis for mistrial is the unavailability of prosecution evidence or when the prosecution is using the resources of the State to harass or achieve a tactical advantage over a defendant. 434 U.S. at 508.

¶28. The Court of Appeals' majority opinion suggests that a trial judge must act "irrationally or irresponsibly" in order for an appellate court to find an abuse of discretion in granting a mistrial. It is true that those words are lifted directly from one part of the U. S. Supreme Court decision in ***Arizona v. Washington***. 434 U.S. at 514. But, by focusing on those words, the Court of Appeals has resorted to the sort of mechanical approach to which the manifest necessity standard is not amenable. Manifest necessity is applied case-by-case, and a critical element is the locus of a specific situation on the "broad spectrum of trial problems."

¶29. We agree that a trial judge has a degree of discretion. We cannot, however, endorse the notion that a trial court can declare a mistrial on its own motion after a trial has begun, without seeking the view of the State or defense, and where a qualified alternate juror is available and seated. The U. S. Supreme Court has said "if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'" ***Arizona v. Washington***, 434 U.S. at 509.

### IV.

¶30. Hanson Jenkins, Jr. did not want to be tried by a jury duly constituted to hear the State's charges against him. He moved repeatedly for a mistrial, and his motion was ultimately granted because the trial court had made an unintended error. There was no double jeopardy bar to his retrial under these facts.

Jenkins's convictions are affirmed.

¶31. **AFFIRMED.**

> **PRATHER, C.J., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. PITTMAN, P.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

> **McRAE, JUSTICE, DISSENTING:**

¶32. While this Court grants certiorari in order to further interpret the manifest necessity requirement applied in double jeopardy cases since *Arizona v. Washington*, 434 U.S. 497, 503-05, 98 S.Ct. 824, 54 L.Ed. 2d 717 (1978) and *Jones v. State*, 398 So.2d 1312 (Miss. 1981), such a standard is only properly used in cases in which the State or the court upon its own motion declares a mistrial.[1] Therefore it is disingenuous for the majority to claim repeatedly that it was upon Jenkins's motion that a mistrial was granted and that he did not want to be tried by this jury. Regardless of which standard is used, that of improper use and bad faith or that of manifest necessity, the majority errs in allowing the retrial of Jenkins which is prohibited by the double-jeopardy provision of the Fifth Amendment. Accordingly, I dissent.

¶33. If Jenkins's motion had in fact been granted (as the majority claims), this Court would not look to whether there was manifest necessity in the trial court's decision to render a mistrial. Instead, Jenkins would have the burden of proving the mistrial was granted for an improper purpose, a burden put upon the defendant.[2] Therefore, if the majority insists that the mistrial was granted on Jenkins's motion, then manifest necessity is of no consequence. If the majority discusses manifest necessity solely because the Mississippi Court of Appeals did in its opinion, it errs since that opinion is now being withdrawn.

¶34. Under either standard, improper purpose or manifest necessity, Jenkins was deprived of his "valued right to have his trial completed by a particular tribunal," *Arizona*, 434 U.S. at 509, and was placed in jeopardy twice for the same offense. Both the Fifth Amendment to the United States Constitution and Article 3, § 22 of the Mississippi Constitution serve to protect against such an event.

¶35. At trial the judge stopped the proceedings after the jurors had been seated when it was called to his attention that one was missing. There were twelve jurors seated in the jury box with one alternate. Upon roll call, it was found that one juror, a Mr. Randle, was absent and that a juror, a Ms. Alston, was improperly seated in the jury box. Jenkins's motion for a mistrial were overruled by the trial judge and since Mr. Randle could not be found, the alternate juror was placed with the jury and the judge allowed the trial to continue. For this Court to condone the choice to continue with the trial is in direct conflict with that of criminal cases where it held that one juror being improperly dismissed tainted an entire trial. In *Thorson v. State*, 721 So.2d 590, 598 (Miss. 1998), this Court reversed and remanded for trial the conviction of a capital offender, holding that the improper use of a peremptory strike of just one juror was enough to require a reversal and remand for a new trial.

¶36. However, the trial was allowed to continue, and it was not until the State had nearly finished the direct examination of its first witness (77 questions had been asked) that Mr. Randle, the missing juror, appeared. Jenkins again moved for a mistrial which was overruled by the judge. The defense made no more motions after this ruling. It took a motion by the State before the judge chose to conduct a lengthy voir dire of juror Randle, two court bailiffs and the circuit clerk and then, upon its own motion, grant a mistrial as indicated

by both the Order and the transcript from the trial as shown below:[(3)](#)

> BY MR. GILMORE: Again, I would renew my objection to proceeding with this Jury and ask the Court to declare a mistrial.
>
> BY THE COURT: That motion is **overruled**. Is there anything else on that issue?
>
> BY MR. GILMORE: **No, sir**.
>
> BY THE COURT: You can tell him to go home now.
>
> BY MR. EVANS (the State): Your Honor, I would make a motion really to ask that you ask if anybody told him to leave or anything like that, just to be safe.
>
> BY THE COURT: That's fine. And, I'm going to tell ya'll what I'm going to do. If he states that I told him to leave that I will declare a mistrial.

¶37. This Court has held that in circumstances similar to above, that when a mistrial is granted on the court's own motion or that of the State, a second trial is barred unless there was manifest necessity for the mistrial. *Mitchell v. State*, 539 So.2d 1366, 1369 (Miss. 1989); *Jones v. State*, 398 So.2d 1312, 1315 (Miss. 1981). While the State may have only indirectly made a motion in this case that led to the court declaring a mistrial on its own motion, "the involvement of the state is relevant in determining whether a second trial is barred."*Mitchell*, 539 So.2d at 1369; *Watts,* 492 So.2d at 1284.

¶38. If in fact the court had granted Jenkins's motion, as the majority believes it did, then the defendant would have been required to show:

> [n]ot only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for the mistrial.

*Divans v. California*, 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (Rehnquist, Circuit Justice 1977); *Watts*, 492 So.2d at 1285.

¶39. Under that standard, there is proof that the mistrial was made or granted in bad faith and for an improper purpose as required by both state and federal law. The improper purpose was to rectify the judge's error in allowing the trial to continue after first being notified that a juror was missing. When the judge blatantly refused to grant Jenkins's first motion for a mistrial and chose instead to resume the trial with an alternate juror, double jeopardy attached. *Jones*, 398 So.2d at 1314 (Rule in Mississippi is that double jeopardy attaches in any criminal proceeding at the moment the trial jury is selected and sworn to try the case). Under either standard, Jenkins was subjected to double jeopardy.

¶40. It is unreasonable for the majority to declare throughout the opinion that Jenkins did not want to be tried by this jury. We required Jenkins to do exactly what was done in this case, move for a mistrial. At every stage of the case he did so. His motions were not granted. As a result, a view towards manifest necessity in this case is blurred at best. Perhaps there could have been a consideration of manifest necessity had the judge properly conducted an investigation at the moment he discovered that a juror was missing. But when he refused to grant a mistrial and instead seated an alternate juror in contravention of our

constitution, double jeopardy attached and the State erred in retrying Jenkins, under either standard. This essentially allowed the State another bite at the apple. Accordingly, I dissent.

1. "[I]f a mistrial is granted upon the court's own motion, or upon the state's motion, a second trial is barred because of double jeopardy unless there was a *manifest necessity* for the mistrial, taking into consideration all the circumstances." *King v. State*, 527 So.2d 641, 643 (Miss. 1988)(emphasis added); *Jones v. State*, 398 So.2d 1312, 1318 (Miss. 1981).

2. This Court held in *Watts v. State*, 492 So.2d 1281, 1284-85 (Miss. 1986), that since the mistrial did not appear "to have been made or granted in *bad faith or for an improper purpose* by either the judge or the prosecutor" double jeopardy did not attach. In quoting Justice Rehnquist, as Circuit Justice, in *Divans v. California*, 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977), the court said "In order to elevate an order granting a mistrial in a criminal case at the request of the defendant to one which could form the basis of a claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for the mistrial." 492 So.2d at 1284-85.

3. "The Court, **on its own motion**, then granted a mistrial on the same grounds as the defendant requested in his motion." Order Overruling Motion To Dismiss, signed by Circuit Judge Clarence E. Morgan, III.