KING, P. J.,
for the court.
¶ 1. William Gaskin was convicted in the Circuit Court of Jackson County of armed robbery. Aggrieved, he appeals asserting as error the following:
I. WHETHER A SECOND TRIAL ON THE SAME INDICTMENT, FOLLOWING A MISTRIAL, VIOLATED GASKIN’S CONSTITUTIONAL RIGHT OF PROHIBITION AGAINST DOUBLE JEOPARDY.
II. WHETHER THE TRIAL COURT ERRED IN ACCEPTING THE PROSECUTOR’S JUSTIFICATION FOR A PEREMPTORY STRIKE.
III. WHETHER GASKIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
Finding no error, we affirm.
PROCEDURAL HISTORY AND FACTS
¶ 2. On February 27, 2000, the police responded to a call that the clerk at the Exxon gas station in Pascagoula, Mississippi was robbed at knife point of over $300 and a cordless phone. William Gas-kin was later arrested for this crime and indicted for armed robbery.
¶ 3. The matter was scheduled for trial on May 23, 2001. After voir dire and a ruling on challenges for cause, the trial judge instructed the attorneys to get together and select a jury. She told them to have a “jury in the box” before lunch, that she was going to “leave [them] alone until then,” and that she “depended on [them] to actually get [her] a jury by then.” The trial judge then left the courtroom. Upon her return, the prosecutor stated ten jurors had been agreed upon to that point. After further consultation, Gaskin’s attorney read the names of the agreed upon twelve jurors and one alternate to the court. The court then stated, “All right. Bring the jury in. Y’all can put your strikes on the record later.”
¶ 4. After those selected for the jury were called and seated, the trial judge dismissed the remaining veniremen and instructed the bailiff to take the selected *365 jurors to lunch. The judge then directed the attorneys to meet in her office at the end of the lunch period for a conference concerning other matters. Defense counsel at this time stated: “[A]nd, Judge, we will have a Batson challenge at that time.” The judge replied, “[W]ell it’s a little late. We’ve let the jury go.” After hearing the defendant’s challenge, the trial judge found that a prima facie case of purposeful discrimination had been established, and required the State to provide race-neutral reasons for its strikes. After hearing counsel’s argumente, the trial judge stated she would consider this issue during lunch. She stated, “[I]f I don’t find there to be a race neutral reason, I’d have no choice but to declare a mistrial because I can’t get the jurors back to pick other jurors. So, I’m in a precarious situation.”
¶ 5. Prior to the jury’s return from lunch, the trial judge ruled, “I’ve considered all of this, the Batson challenge, and discussed it with the attorneys. And in abundance of caution, I’m going to declare a mistrial and we’re going to reset this case for trial on Tuesday, May 28th.”
¶ 6. At trial on May 28, Gaskin again raised a Batson objection to the State’s exercise of peremptory challenges against Blacks. The trial court found that a pri-ma facie case of discrimination had been shown, and required the State to offer race-neutral reasons for its peremptory challenges. This time the trial court accepted the State’s reasons as being race-neutral, and allowed the exercise of the peremptory challenges.
¶ 7. Gaskin was found guilty and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections.
DISCUSSION
I. WHETHER A SECOND TRIAL ON THE SAME INDICTMENT, FOLLOWING A MISTRIAL, VIOLATED GASKIN’S CONSTITUTIONAL RIGHT OF PROHIBITION AGAINST DOUBLE JEOPARDY.
¶ 8. Gaskin contends that when the second trial commenced on the same indictment, the State violated his right to be free from multiple prosecutions for the same offense. In Jones v. State, the Mississippi Supreme Court held:
[Bjecause of the guarantee against double jeopardy granted to all citizens by the Fifth Amendment to the United States Constitution no retrial for the same offense will be permitted in any criminal case in which the first trial, following the swearing and empaneling of the jury, was aborted prior to its conclusion, unless exceptional circumstances existed in the first case, and there was manifest necessity to declare a mistrial.
Jones v. State, 398 So.2d 1312, 1314 (Miss.1981). Gaskin argues that the mistrial in the first proceeding was caused by the State’s improper exercise of peremptory strikes, and therefore, the second attempt to prosecute him constituted double jeopardy.
¶ 9. The State rebuts Gaskin’s claim on three grounds. First, the State claims that at the first proceeding the jury was never sworn in and, therefore, double jeopardy protection never attached. Secondly, the State asserts that the claim is barred because he never raised it with the trial court. Third, the State asserts that although Gaskin claims that the mistrial was granted as a result of his Batson challenge to the State’s improper exercise of peremptory challenges, the mistrial was actually caused by exceptional circumstances and manifest necessity because there were no jurors available from which to choose an impartial jury.
*366 ¶ 10. Neither side raises any issues concerning the selection manner and method utilized by the trial court. However, as stated above, the State has raised the question of whether the jury was ever administered the official oath at the first proceeding because the court order gives one version of what happened and the transcript gives another. The protection against double jeopardy does not attach in a criminal proceeding until after the jury is selected and sworn to try the case. See Jones v. State, 398 So.2d 1312, 1314 (Miss.1981). Therefore, before we can determine if Gaskin may raise this issue for the first time on appeal and if his constitutional right to be free from multiple prosecutions for the same offense was violated, we must first determine whether the jury had been sworn and whether the protection against double jeopardy had attached.
¶ 11. The order entered following the mistrial stated that the jury had been sworn. However, a thorough review of the transcript clearly reveals that the twelve jurors and one alternate, although finally selected, called individually by name, and seated in open court, were never administered the official oath. In fact, after the jury was seated, the trial judge told the jurors, “[Wje’re not going to do anything to start the trial right now. They’ve got everything ready to take you to lunch.” She then ordered the bailiff to take them to lunch and excused the jurors. A mistrial was declared before their return.
¶ 12. In Jenkins v. State, a criminal case where the court papers gave one version and the transcript gave another, the Mississippi Supreme Court found that the order misstated and incorrectly characterized the events of the proceeding. Jenkins v. State, 759 So.2d 1229, 1234(¶ 16) (Miss.2000). In the present case, we also find, as described above, that the order misstated and incorrectly characterized the events of the first proceeding, specifically as to the jurors being administered the oath.
¶ 13. Therefore, there can be no double jeopardy as this first incident cannot count as his “first” jeopardy since the jury had not been sworn and the rules prohibiting double jeopardy could not have been violated as such protection did not attach to Gaskin’s first proceeding. Thus, this assignment of error is without merit. Because we find that jeopardy had not attached, the other questions associated with this issue are moot.
II. WHETHER THE TRIAL COURT ERRED IN ACCEPTING THE PROSECUTOR’S JUSTIFICATION FOR STRIKING PEREMPTORILY A PROSPECTIVE JUROR.
¶ 14. Six days after the mistrial, the State started the second effort at trial of this case. Gaskin again raised a Batson challenge to the State’s exercise of peremptory challenges against minorities. He noted that four of the State’s seven peremptory challenges were directed at Blacks. The trial court again found a pri-ma facie pattern of discrimination and required that the State provide race-neutral reasons. The trial judge found the State to have provided sufficient race-neutral reasons for the State’s exercise of peremptory challenges, and therefore allowed them.
¶ 15. Gaskin appealed his conviction, citing Batson violations as one alleged error.
¶ 16. This Court, by order dated October 8, 2002, remanded this matter to the trial court, and directed:
This Court, on its own motion, has determined it appropriate to remand this case to the Circuit Court of Jackson County for thirty (30) days for the limited and specific purpose of requiring the *367 circuit judge to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors, including a specific analysis of whether the reasons offered by the State were, while facially neutral, a pretext for prohibited discrimination.
This matter was scheduled for trial in the Circuit Court of Jackson County, beginning on May 28, 2001. After selection of a jury panel, but prior to receipt of any testimony, the Defendant challenged the State’s use of peremptory jury challenges as having been improperly utilized against the only minorities in the venire pool, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At that time, the trial judge found a prima facie case of discrimination existed, and required the state to offer race-neutral reasons for the exercise of its peremptory challenges. Finding that the State’s reasons were not race-neutral, the trial judge declared a mistrial and rescheduled this case for trial the following week, on May 29, 2001.
In the May 29, 2001 trial, the Defendant again raised a Batson objection to the State’s exercise of peremptory challenges. The trial court again found a prima facie case of discrimination by the State in the exercise of its peremptory challenges, and as during the aborted May 23, 2001 trial, required the State to offer race-neutral reasons for the exercise of its peremptory challenges.
The State offered its reasons for the exercise of each of the peremptory challenges, and the trial court, without making a specific on-the-record analysis and determination, as required by Hatten v. State, 628 So.2d 294, 298 (Miss.1993), merely held that the State’s reasons were race-neutral and accepted them without further discussion.
This Court, on its own motion, remands this case to the Circuit Court of Jackson County for a period of thirty (30) days, during which time the circuit judge is directed to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors, including a specific analysis of whether the reasons offered by the State were, while facially neutral, a pretext for prohibited discrimination.
Having found a prima facie pattern of discrimination in the State’s exercise of its peremptory challenges in this same case just six (6) days earlier, the trial judge should give heightened consideration to the possible pre-textual nature of the State’s reasons for the exercise of its peremptory challenges against minorities.
THEREFORE IT IS ORDERED that on the Court’s own motion this matter be, and hereby is, remanded to the Circuit Court of Jackson County for thirty (30) days for the specific and limited purpose of requiring the circuit judge to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors, including a specific analysis of whether the reasons offered by the state were, while facially neutral, a pretext for prohibited discrimination. The circuit court shall certify its findings to this Court.
¶ 17. On December 5, 2002, the trial judge filed her response with the clerk of this Court, in which she stated:
JUROR 11
The reason presented to this Court by the State for striking Black Female juror 11 was that she knew Monica Cox, *368 an employee of the Public Defender’s Office. The Defendant was represented at the trial of this matter by an attorney from that office. Counsel for the Defendant countered that the juror stated that she could be fair. This Court found that the reason stated by the Prosecution was race-neutral and did not seem to be pretextual. This Court is well aware that Monica Cox is often actively involved in the defense of Public Defender clients. She appears regularly in the courtroom during trials, assists with witnesses and aids the defense attorneys at all stages of a jury trial. It should also be noted that juror 22 was struck by the State for the same reason. Although both of these jurors were Black, this Court finds that the reasons given for the strikes were consistent -with other similarly-situated jurors. The only other member of the venire who answered that she knew Monica Cox was juror 39, but the jury process was completed before that juror was considered. Further, there were no unchallenged jurors of the opposite race who knew Monica Cox to illustrate that the stated-reason was pretextual.
JUROR 18
The reason given by the State for striking Black juror 18 was her demean- or during voir dire. The State contended that she sat with her arms folded, rolled her eyes and seemed generally hostile to the entire process. The Defense attorney responded by stating that he did not notice any such behavior. This Court found that the reasons given for the strike were race-neutral and further finds that the recitation of the reasons given appeared credible. Nothing at the time, nor in the record, gives this Court any reason to believe that the State was deceptive in its stated reasons. However, the Court ended its analysis regarding this juror when it was discovered that she was unavailable for Thursday of the week of trial. Because of her possible unavailability for the entire trial, the Court excused her for that reason.
JUROR 22
The reasons given for striking Juror 22 were that she knew Monica Cox, an employee of the Public Defender’s Office and that her husband worked for a bonding company. The Defense Attorney presented no rebuttal argument. As stated previously, this Court finds that the State’s first reason was not pretextual due to the consistent reason and treatment of other similarly-situated jurors. Additionally, the Prosecution also based its strike of this juror on the fact that her husband worked for a bonding company. Certainly, this Court takes notice that, by the very nature of the business, a bonding company has close contact with defense attorneys and criminal defendants. Further, bondsmen gain economic benefits from defendants. This Court finds that this stated reason for this peremptory strike was not pretextual. Further, the State’s demeanor in presenting these reasons to the Court appear credible, with no hint of underlying discriminatory motive.
JUROR 23
The reason given by the State for striking Black Female juror 23 was that she is an -unemployed college graduate. The State contended also that the District Attorney’s Office was currently prosecuting twelve defendants with her same last name. Defense Counsel argued that she was specifically asked if any family member had been prosecuted for a crime. She did not respond. Fur *369 ther, Defense Counsel did not believe that her unemployment status should be weighed against her. Although the State could and should have followed up with specific questions to juror 23 if there were any doubts regarding the credibility of her responses or lack thereof, this Court found the reasons stated to be race-neutral and not pretex-tual. Although the State did not strike jurors 28 and 31, who specifically stated that family members had been investigated or prosecuted for crimes, these crimes were in other jurisdictions. No argument or evidence was presented to this Court at the time of the hearing that, in fact, the State was not prosecuting defendants with that juror’s same last name. This Court found this reason to be race-neutral and. non-pretextual. Further, the added reason that this juror was an unemployed college graduate weighed into the Court’s decision. The State and the Defendant have an understandable interest in selecting responsible citizens to serve on a jury. There was no evidence at this hearing that he State failed to challenge similarly-situated unemployed white jurors. The Court further found the State to be credible in its recitation of its reasons for this peremptory challenge and finds there to be no underlying discriminatory motive in the State’s striking of juror 23
¶ 18. The trial judge sits as finder of fact in the resolution of Batson challenges. Robinson v. State 726 So.2d 189, 193(¶ 12)(Miss.Ct.App.1998). As such the trial judge’s findings are accorded great deference, and will not be reversed unless they are clearly erroneous or against the overwhelming weight of the evidence. Coleman v. State, 697 So.2d 777, 785 (Miss.1997); Collins v. State 691 So.2d 918, 926 (Miss.1997).
¶ 19. This Court has reviewed the findings of the trial court and cannot say that they are clearly erroneous, or against the overwhelming weight of the evidence. In reaching this conclusion, we note that the trial court’s findings were made after subjecting the State’s reasons to heightened scrutiny as directed by this Court. While this Court’s reading of the record might have lead it to resolve this matter differently, it is not the function of this Court to substitute its judgment for that of the trial court.
¶ 20. We find no merit in this assignment of error.
III. WHETHER GASKIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 21. Gaskin claims that his counsel’s failure to recognize the alleged double jeopardy violation, after the first proceeding and before the trial on May 29, 2001, commenced, constituted ineffective assistance of counsel. We have determined above, in assignment of error one, that the record fails to affirmatively reflect that the jury was sworn as required for double jeopardy to attach. Thus, there was no double jeopardy violation. Accordingly, trial counsel’s failure to object to Gaskin’s second trial on the basis of double jeopardy was not a deficiency in his performance and this assignment of error is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
*370 McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ„ CONCUR. GRIFFIS, J., NOT PARTICIPATING.